NOT FOR PUBLICATION                                (Doc. No. 9)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

———————————————————————

SCHOOL SPECIALITY, INC.,

          Plaintiff,                                          Civil No. 14-4507 (RBK/AMD)

          v.

                                                                      **OPINION**

THOMAS FERRENTINO and EDUCATION
OUTFITTERS, INC.,

          Defendants.

———————————————————————

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendants Thomas Ferrentino's ("Ferrentino") and Education Outfitters, Inc.'s ("Education Outfitters") (collectively "Defendants") Motion to Dismiss Plaintiff School Specialty, Inc.'s ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. No. 9). Defendants claim that Plaintiff's alleged damages for various state employment and tort claims do not satisfy the amount in controversy required for this Court to have jurisdiction under 28 U.S.C. § 1332(a). For the reasons set forth below, Defendants' Motion to Dismiss will be denied.

I.      **BACKGROUND**

According to its Complaint, Plaintiff is a leading education company serving the pre-kindergarten through 12th grade market nationwide, addressing a broad spectrum of

educational needs, including basic school supplies and classroom furniture.  (Compl. ¶ 7.)

On or about January 2, 1996, Ferrentino began his employment with Plaintiff as an

Account Manager.  (Id. ¶ 9.)  As an Account Manager, Ferrentino was assigned Southern

New Jersey and Southeastern Pennsylvania as his territory, and acted as Plaintiff's

primary furniture and supplies sales representative to the public and private schools in his

territory.  (Id. ¶ 10.)

In his role as Account Manager, Ferrentino had access to certain financial and

other confidential and proprietary information and trade secrets belonging to Plaintiff,

including but not limited to, the identity and contact information of Plaintiff's customers,

the purchasing preferences of Plaintiff's customers, and the pricing of Plaintiff's

products.  (Id. ¶ 14.)  In 2013 Ferrentino earned total compensation from Plaintiff,

including base salary and commissions, of $144,363.49.  (Id. ¶ 13.)  On or about January

6, 2014, Ferrentino resigned from Plaintiff's company, effective January 10, 2014.  (Id. ¶

18.)

As early as January 2013, Ferrentino commenced outside employment with

School Outfitters, a competitor of Plaintiff.  (Id. ¶ 19.)  Then, on February 23, 2013,

while employed with Plaintiff, and without its knowledge or authorization, Ferrentino

created Education Outfitters.  (Id. ¶ 41.)

In May 2014 the Elk Township Board of Education ("Elk Township"), a New

Jersey based school and client of Plaintiff, contacted Plaintiff regarding a defect in the

order it had placed with Ferrentino in June 2013.  (Id. ¶ 34.)  Elk Township provided

Plaintiff with two purchase orders, dated June 6, 2013, for "CST" furniture worth

$17,482,08 and main office furniture worth $5,808.44.  (Id. ¶¶ 36-38.)  On both orders

Education Outfitters was listed in the "vendor box", and each stated in the description, "Gave P.O. to Tom F. (Sch. Specialty)." (Id.)  Plaintiff claims that Ferrentino misled Elk Township to believe that they were purchasing furniture from School Specialty, when in fact they were purchasing from Ferrentino's own company.  (Id. ¶ 43.)

In June 2014, Plaintiff learned that Ferrentino processed a purchase order for Villa Joseph Marie High School, a Pennsylvania based private school and client of Plaintiff, on February 20, 2013, two days before he incorporated Education Outfitters. (Id. ¶ 45.)  That order was for cafeteria furniture worth $46,800.42.  (Id. ¶ 46.)  Plaintiff alleges Ferrentino misrepresented to Villa Joseph Marie High School that it was purchasing the February 2013 order through Plaintiff's company, when in fact the order was purchased through Ferrentino or Education Outfitters directly.  (Id. ¶ 47.)

While employed with Plaintiff, Ferrentino also allegedly breached his common law obligations and misappropriated Plaintiff's trade secrets.  (Id. ¶ 20.)  Ferrentino forwarded certain email communications from Plaintiff's clients and site plans from one of Plaintiff's clients to his personal email address on November 19, 2013.  (Id. ¶ 21.) Then, on December 31, 2013, Ferrentino emailed, from his work email to his personal email, cafeteria layouts for one of Plaintiff's clients, the New Hope School District.  (Id. ¶ 22.)  Later, Ferrentino emailed to his personal email the email addresses of approximately 383 of Plaintiff's clients or potential clients on January 2, 2014.  (Id. ¶ 23.) On January 5, 2014, he emailed himself purchase orders, email communications with Plaintiff's clients, and Plaintiff's internal emails regarding pricing.  (Id. ¶ 24.)  Then, in multiple emails forwarded from his work email address to his School Outfitter email

address, Ferrentino sent himself purchase orders and email communications from

Plaintiff's clients on January 7, 2014.  (Id. ¶ 25.)

Additionally, on January 7, 2014, while still employed with Plaintiff, Ferrentino

sent an email to many of Plaintiff's public and private school clients notifying them that

he left his position with Plaintiff and was currently employed by School Outfitters.  (Id. ¶

26.)  In this email, sent from his School Outfitters email address, Ferrentino stated,

"[o]ver the last few years School Specialty has gone through many changes that have

effected [sic] their ability to service their customers … During these years the identity of

the company has moved away from a people friendly company towards a company that is

only about its bottom line … Each of you have seen a drop in the way School Specialty

has come to market, serviced you [sic], and delivered to you."  (Id.)  Ferrentino went on

to solicit Plaintiff's customers, stating "[n]ot one company has the ability to service you

like School outfitters."  (Id.)

Plaintiff filed its Complaint on July 16, 2014 (Doc. No. 1), alleging that

Ferrentino breached the duty of loyalty (Count I), that Defendants violated New Jersey's

Trade Secrets Act (Count II), that Defendants tortiously interfered with Plaintiff's

business relations (Count III), that Defendants engaged in unfair competition (Count IV),

that Defendants were unjustly enriched at the expense of Plaintiff (Count V), that

Ferrentino converted Plaintiff's financial and other confidential and proprietary

information and trade secrets (Count VI), that Defendants committed fraud against

Plaintiff (Count VII), that Ferrentino defamed Plaintiff (Count VIII), and that Defendants

are liable to Plaintiff for accounting (Count IX).  (See Compl.)  Concerning monetary

damages, Plaintiff seeks an amount equal to the greater of the lost profits to Plaintiff or

the profits that Defendants earned at Plaintiff's expense based on his breach of his duty of loyalty, the return of all compensation paid for Ferrentino's services rendered to Plaintiff during the period of Ferrentino's unlawful actions, and compensatory and punitive damages. (See id. at 20.)

Defendants filed their present motion to dismiss for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), on August 6, 2014 (Doc. No. 9), claiming Plaintiff failed to plead facts which show the amount in controversy is in excess of $75,000.00. For the reasons set forth below, the Court will deny Defendants' motion to dismiss.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. See Gould Electronics Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000). "[I]n a factual attack under Rule 12(b)(1), the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." Id. (citing Mortensen v. First Fed. Sav. And Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). However, according to the Third Circuit in Samuel-Basset v. KIA Motors America, Inc., 357 F.3d 392 (3d Cir. 2004), "when the relevant facts are not in dispute," the party challenging federal jurisdiction on the basis that the amount in controversy cannot exceed $75,000 bears the burden of showing that, "to a legal certainty," the claim is less than the jurisdictional amount. Id. 357 F.3d at 397-98 (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)); see also Frederico v. Home Depot, 507 F.3d

188, 195 (3d Cir. 2007) ("[T]he <u>challenger</u> to subject matter jurisdiction ha[s] to prove, to a legal certainty, that the amount in controversy c[an] not exceed the statutory threshold.") (emphasis original).[1]

When applying the "legal certainty" test established in <u>St. Paul Mercury</u>, "dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met." <u>Columbia Gas Transmission Corp. v. Tarbuck</u>, 62 F.3d 538, 541 (3d Cir. 1995). Additionally, "the question whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims. The court should not consider in its jurisdictional inquiry the legal sufficiency of those claims or whether the legal theory advanced by the plaintiffs is probably unsound; rather, a court can dismiss the case only if there is a legal certainty that the plaintiff cannot recover more than [$75,000]." <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 583 (3d Cir. 1997). In making such a determination, "[i]t necessarily follows that whether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law." <u>Onyiuke v. Cheap tickets, Inc.</u>, 435 Fed App'x 137, 139 (3d Cir. 2011). Finally, whether "diversity jurisdiction exists is determined by examining 'the facts as they exist when the complaint is filed.'" <u>Id.</u> at 138 (quoting <u>Newman–Green, Inc. v. Alfonzo–Larrain</u>, 490 U.S. 826, 830 (1989)).

---

[1] Defendants contend that they present a factual challenge to this Court's jurisdiction. (Defs.' Br. at 3.) However, Defendants have not clearly identified any such factual disputes, nor have they provided the Court with affidavits, depositions, or testimony to help resolve any of these alleged disputes. <u>See</u> <u>Mortensen</u>, 549 F.2d at 891. Instead Defendants' brief is replete with allegations of Plaintiff's failure to <u>plead</u> sufficient details to meet the required amount in controversy. Regardless, the Court will analyze the allegations in Plaintiff's Complaint, without presuming its truthfulness, and weigh the Complaint against itself to make a determination of whether Plaintiff cannot meet the jurisdictional amount, "to a legal certainty." <u>St. Paul Mercury</u>, 303 U.S. at 289; <u>Gould Electronics</u>, 220 F.3d at 178; <u>see also</u> <u>Gibbs v. Buck</u>, 307 U.S. 66, 71-72 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.")

## III.   DISCUSSION

Defendants have moved to dismiss Plaintiff's claims for lack of jurisdiction pursuant to Rule 12(b)(1), based on Plaintiff's alleged failure to plead the jurisdictional amount in controversy required under 28 U.S.C. § 1332.  (Defs.' Br. at 1.)  Plaintiff contends that the Court cannot determine that the damages do not exceed the jurisdictional amount to a legal certainty.  (Pl.'s Opp'n at 7.)  Because Plaintiff's request to recoup compensation in its claim for breach of the duty of loyalty exceeds the amount in controversy requirement, the Court finds Plaintiff has met its burden under § 1332.

Plaintiff argues that, at the very least, the demand that compensation paid to Ferrentino for his services rendered to Plaintiff be returned for the period of his unlawful actions is in excess of the jurisdictional amount.  (Id.)  Under New Jersey law, employers may seek forfeiture of an employee's compensation in addition to traditional damages in breach of the duty of implied loyalty cases.  Cameco, Inc. v. Gedicke, 157 N.J. 504, 519 (1999).  "[T]he egregiousness of the employee's conduct may affect the employer's right to withhold or recoup the employee's compensation."  Id. at 521.  "If the employee directly competes with the employer, aids the employer's direct competitors or those with interests adverse to the employer's interests, participates in a plan to destroy the employer's business, or secretly deprives the employer of an economic opportunity, the employee may forfeit the right to compensation."  Id.[2]  Plaintiff has set forth these sort of allegations.

---

[2] The New Jersey Supreme Court in Cameco also noted the various considerations affecting the determination of the appropriate remedy for a breach of an employee's duty of loyalty, including forfeiture of the employee's compensation.  Id. at 521.  "One consideration is the possible existence of contractual provisions.  A provision might permit an employee to seek a second source of income, whether through a second job or an independent business.  Conversely, a non-competition covenant might limit an employee's economic activities both during and after employment.  A second consideration is whether the employer

It is claimed that, as part of Ferrentino's alleged breach of the duty of loyalty, he "engaged in a variety of actions that were detrimental to and/or competitive with the interests of School Specialty." (Compl. ¶ 56.)  Plaintiff contends Ferrentino "actively solicited School Specialty's customers for and diverted opportunities to Education Outfitters, School outfitters and himself for his own benefit." (Id. ¶ 57.)  Further, "[d]uring his employment with School Specialty, Ferrentino misappropriated and used School Specialty's Confidential and Proprietary Information in order to, inter alia, undercut School Specialty's pricing, and solicit and divert School Specialty's pricing, and diver School Specialty's customers to Education Outfitters, School Outfitters and himself for his own benefit." (Id. ¶ 58.)  Not only does Plaintiff request damages equal to its lost profits, but it also requests that "Ferrentino should be ordered to return all compensation paid for his services rendered to School Specialty during the period of his unlawful actions." (Id. ¶ 60.)

The Complaint states that as early as February 20, 2013, Ferrentino was misrepresenting information to Plaintiff's clients in order to channel business to himself or Education Outfitters. (Id. at 47.)  Taken with the language of the Complaint in Count

---

knew of or agreed to its employee's secondary profit-seeking activities.  An employee's disclosure of an intention to pursue a second source of income alerts the employer to potential problems and protects the employee from a charge of disloyalty.  The third consideration concerns the status of the employee and his or her relationship to the employer.  An officer, director, or key executive, for example, has a higher duty than an employee working on a production line.  Fourth, the nature of the employee's second source of income and its effect on the employer are relevant.  An employee's duty of loyalty to an employer generally precludes acts of direct competition.  Employees should not engage in conduct that causes their employers to lose customers, sales, or potential sales.  Nor should they take advantage of their employers by engaging in secret self-serving activities, such as accepting kickbacks from suppliers or usurping their employer's corporate opportunities.  Employees who defraud their employers or engage in direct competition with them run the risk of discharge, forfeiture of the right to compensation, and other legal and equitable remedies.  The extent to which the preceding considerations apply will vary from one case to another.  Absent a governing contractual provision, the judicial task is to search for a fair and reasonable solution in light of the relevant considerations." Id. at 521-22.

I, it appears Plaintiff seeks approximately ten months' worth of Ferrentino's compensation. The Complaint also alleges Ferrentino earned compensation amounting to $144,363.49 in 2013. (Id. ¶ 13.) Thus, it would appear on the face of the Complaint that Plaintiff seeks to recoup at least $120,000.00 in damages, which may be available under New Jersey law if Plaintiff is successful on this claim. Taken with the other specific amounts listed in the Complaint, the Court cannot say to a legal certainty that Plaintiff has failed to plead the jurisdictional amount.

Defendants offer no evidence to dispute this amount. Rather, Defendants' sole argument is that Plaintiff did not specify the exact dollar amount of compensation to be repaid, and thus any amount should not be considered in deciding this motion. (See Defs.' Br. at 4; Defs.' Rep. Br. at 1-2.) However, as noted above, the Complaint can be read to seek $120,000.00 in compensation based on a reasonable construing of the factual allegations. Additionally, Defendants apparently want the Court determine the merits of Plaintiff's claim to recoup damages as part of a finding that Plaintiff has failed to satisfy the amount in controversy. (See Defs.' Rep. Br. at 2 ("The Complaint does not, as it cannot, allege plaintiff did not realize income from defendants [sic] efforts during this period of time. … Defendant asserts there is nothing in this Complaint which would establish plaintiff was entitled to recoup compensation. … Here there is no written contract alleged and defendant's position was that of an account manager. He was not a key executive with plaintiff and such a position is not alleged.") (citing Cameco, 724 N.J. at 521); Defs.' Br. at 4 ("Indeed there is no allegation plaintiff was not performing his job during the time at issue.").) The Court's role, however, is not to decide the merits of the

case, but to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." <u>Mortensen</u>, 549 F.2d at 891.

Here, the only evidence to weigh is the Complaint itself, along with Defendants' conclusions concerning what the outcome of the case should be.  Without reaching the merits of Plaintiff's claim, however, the Court finds that Plaintiff has pleaded factual matter supporting a claim with an amount in controversy in excess of $75,000.00.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss will be **DENIED**.  An accompanying Order shall issue.

Dated:     12/16/2014                                         s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge